## Hearst v. D'Orsay et al.

*Harry N. Ball*, for plaintiff.

*Harry A. Rutenberg*, for defendant.

FLOOD, J., June 30, 1954.—The complaint avers that plaintiff and defendant D'Orsay entered into a

contract making plaintiff the exclusive personal representative of D'Orsay, who is a singer, for a period of 10 years from April 22, 1953. Under the contract D'Orsay is to pay plaintiff 10 percent of his gross earnings during the 10-year term and is to assign his right, title and interest to all his sources of income to plaintiff. Plaintiff is to act as trustee of all D'Orsay's earnings. The complaint states that in violation of this agreement D'Orsay has repeatedly failed to report his earnings, pay 10 percent of them to the plaintiff or to assign his interest in his sources of income to plaintiff, and that the other defendants have entered into a contract of employment with D'Orsay. The complaint prays that D'Orsay be enjoined from receiving any moneys from the other defendants on account of his contract with them, that they be restrained from paying any money to him, that D'Orsay be ordered to transmit his wages from the other defendants to plaintiff, to transmit to plaintiff all his earnings, to pay plaintiff the 10 percent commission agreed to in the contract, to account for all moneys received from professional engagements from April 22, 1953, to date and to pay plaintiff what shall appear to be due upon such account.

To us this appears to be nothing other than an attempt to specifically enforce an exclusive contract to plaintiff's services for a 10-year period. Even assuming that this exclusive contract implied a negative covenant—although none is expressed—binding defendant from obtaining employment other than through plaintiff, we cannot see that such a negative covenant should be enforced against this defendant. Although a professional singer, his services do not appear to be of a unique character. Cf. 4 Pomeroy, Equity Jurisprudence, §§1343, 1344. Further, since it does not appear that plaintiff is a competitor of the

parties for whom defendant is now performing, we do not see that defendant's performance of any negative obligations would have any value to plaintiff in itself, and consequently an injunction should not be granted. See Williston on Contracts, §1450; A. L. I. Restatement of the Law of Contracts, §380 (d).

If this is not a suit for specific performance, it is a mere suit at law for breach of contract and therefore should be transferred to the law side of the court: Pomeroy on Equity, sec. 221 (b); Byrne's Estate, 122 Pa. Superior Ct. 413 (1936); Roth et al. v. Hartl et ux., 365 Pa. 428 (1950). In such case the attempt to have all defendant's wages paid over to plaintiff amounts to an attempt to attach his wages in violation of the Act of 1842: Lehigh V. R. Co. v. James Woodring, 116 Pa. 513 (1887).

It is true that plaintiff asks for an accounting but the accounting is merely an aid of a suit for breach of contract. There are no mutual accounts between the parties. There is no accounting really necessary since plaintiff's claim is based upon defendant's gross earnings and anything he wishes can be obtained by discovery proceedings: Pa. R. C. P. 1021; Maher et al. v. Richlin Stores, Inc., et al., 85 D. & C. 67 (1953). This is not sufficient reason for bringing the case into equity: Camden Fibre Mills, Inc., v. Lush Cotton Products Co., Inc., 75 D. & C. 468 (1950).

This is not the type of case in which equity takes jurisdiction to avoid multiplicity of actions: Horan v. Gilberton Borough School District, 40 D. & C. 645 (1941), 30 C. J. S. 365 §42. If plaintiff's right is at law only, he must sue for the amount due at the time of suit or verdict and cannot go into equity to collect the amounts to become due in the future upon the theory of avoidance of multiplicity.

The preliminary objections are sustained.